CLIFTON, Circuit Judge,
dissenting:
“Deadly force cases pose a particularly difficult problem,” we have observed, “because the officer defendant is often the only surviving eyewitness.” Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.1994). This is one of those cases. Rafael Gonzalez is dead and cannot speak for himself.
That does not mean that the court can or should speak for him, but it does mean that we must examine the evidence presented by the defendants with a critical eye. As we held in Scott, “the court may not simply accept what may be a self-serving account by the police officer. It must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer’s story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably.” Id.
There is a glaring inconsistency in the story told by the police officers here. The main thrust of their testimony might be correct, and it might be the case that their use of deadly force was justified, but we are reviewing a summary judgment and we cannot properly conclude that there is no genuine issue of material fact as to what led to the fatal shooting. As a result, I respectfully dissent.
The inconsistency concerns what happened during the few seconds right before Gonzalez was shot in the head. According to the evidence submitted by defendants, Gonzalez was in the driver’s seat of the van. Officer Matthew Ellis approached the van from the driver’s side, and Officer Daron Wyatt approached it from the passenger’s side. A struggle ensued. Wyatt entered the van from the passenger side and began punching Gonzalez in the head and face. Gonzalez put the car into gear and started driving away, with Wyatt in the van. Wyatt pulled out his gun and shot Gonzalez in the head.
The majority opinion concludes, “[t]he record taken as a whole does not support any inferences other than essentially what the officers claim: Wyatt was an unbuckled passenger in a rapidly accelerating van with an escaping and noncompliant suspect.” Majority op. at 772. If that is what happened, then I agree that Officer Wyatt acted reasonably in resorting to deadly force. But it is simply not so clear that the events happened that way. Indeed, the story as told by the officers appears to me to be physically impossible.
There are three pieces to this puzzle: the speed of the vehicle, the distance it traveled, and the time that elapsed. Those pieces don’t fit together.
The speed of the van is the most important piece. It was that speed that the majority opinion primarily relies upon to conclude that it was reasonable for Wyatt to shoot Gonzalez in the head. Wyatt *774 testified that Gonzalez “floor[ed] the accelerator and violently accelerated northbound.” He-estimated that the van was going about 50 miles per hour when he shot Gonzalez., Ellis told a similar story, saying that Gonzalez “stomped- down” on the gas pedal, causing the van’s tires to squeal.
But that description simply-cannot be squared with Wyatt’s testimony about time and distance. Wyatt estimated that less than ten seconds, -and possibly less than five seconds, passed between the van moving forward and his firing of the fatal shot. He also testified that the van had traveled approximately fifty feet in that time. As plaintiffs have argued, and the majority opinion acknowledges; at 12 n.3, a vehicle that traveled fifty feet in ten seconds would have an average speed of only 3.4 miles per hour. Nobody should mistake 3.4 miles per hour for 50. If the time period is cut to five seconds, the average speed only increases to 6.8 miles per hour. That is hard to mistake for 50 miles per hour, as well. An actual speed of 3 to 6 miles per hour is simply inconsistent with Wyatt’s testimony as to the speed of the van.[1] It also appears inconsistent with the testimony of both Wyatt and Ellis that Gonzalez “floored” or “stomped down” oh the gas.
The majority opinion attempts to shrug off this discrepancy by excusing Wyatt’s estimates of time and distance as just “rough estimates.” Majority op. at 771. That approach is wrong in two different ways.
First, the estimates could not have been that far ' off. The period of time that elapsed could not have been much shorter, given all that happened during that time according to the officers’ testimony. Consider the description of those events provided in the majority opinion: “According to Wyatt, Gonzalez ‘floor[ed] the accelerator.’ Wyatt moved from his knees to a sitting position and yelled at Gonzalez to stop. Wyatt then attempted to knock the vehicle’s gearshift out of gear, but Gonzalez slapped his hand away. Without giving another warning, Wyatt pulled out his gun and shot Gonzalez in the head.” Id. at 769. Events were moving rapidly, to be sure, but it is not obvious that all of that could have taken place in much less than five seconds. Nor can the estimate that the van traveled about fifty feet be blithely excused. There was plenty of time after the episode took place to check how far the van traveled. Defendants did not submit evidence that the actual distance was substantially greater than fifty feet. We cannot assume that it was.
Second, and more importantly, the majority opinion applies the wrong standard when it brushes off the “rough estimates” by emphasizing other parts of the officers’ story. This is a summary judgment. It is for the jury to weigh the evidence, not us. A jury could conclude that the inconsistency does not impair the officers’ credibility and that even if the estimates of speed, time, and distance were way off, the events were such that Officer Wyatt’s life was endangered and his use of deadly force *775 was justified. But a jury could also conclude, presented with this evidence, that the officers’ testimony should not be believed. As we held in Scott, the court is supposed to “carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer’s story is internally consistent and consistent with other known facts.” 39 F.3d at 915. In this case, the story told by the officers is not internally consistent. It is not our job to explain away the discrepancy.
It is especially not our job to explain away the discrepancy by making up an unsupported theory. The majority alternatively dismisses the van’s speed as immaterial, arguing'that even if the vehicle was “traveling relatively slowly,” Wyatt’s behavior was unquestionably justified. Majority op. at 771. But, as noted above, Wyatt not only estimated the speed of the van as 50 miles per hour, he testified that Gonzalez “floored the accelerator and the van violently accelerated.” He did not testify that he acted because he feared that the van might speed up; he claimed that it was already speeding away. The majority opinion’s effort to erase the inconsistency isn’t consistent with the defendant’s own testimony. And it ignores the possibility that the jury might conclude from the contradictory evidence that Wyatt’s testimony was not to be believed.
If Wyatt was sitting in the passenger seat of a vehicle going 3 to 4 miles per hour when he whipped out his gun and, without warning, shot Gonzalez dead, a reasonable jury might conclude that his actions were unreasonable. The majority opinion tries to eliminate speed from its analysis, citing to Wilkinson v. Torres, 610 F.3d 546, 552 (9th Cir.2010). But in Wilkinson, we did not say that the threat of speed always justified the use of deadly force; we emphasized the importance of considering all the facts in excessive force cases. Id. at 551. In Wilkinson, an officer thought his partner was standing in the mud, disoriented, next to a fleeing minivan. Id. The minivan was reeling, the driver was attempting to accelerate. Id. The officer shot the driver multiple times. Id. The plaintiffs argued that the vehicle was moving too slowly to endanger the officers. Id. We decided that even so, “it could have gained traction at any time, resulting in a sudden acceleration in speed,” while the officer believed his partner to be standing nearby. Id. at 552. Given these facts, we decided that deadly force was justified. Here, Wyatt was not on foot next to a vehicle that might run him over at any moment should it have accelerated. He was inside the car — a car that might have been slowly rolling forward. Wilkinson does not answer whether Wyatt behaved reasonably. A jury should.
I respectfully dissent.

. A vehicle traveling 50 miles per hour covers more than 73 feet in a second. The van was accelerating, so it would take some time for it to reach the final speed, but that-is another reason to question the account given by the officers. Powerful sport cars are known for going "0 to 60" mph in less than five or six seconds. Gonzalez was driving a 1991 Mazda MPV. The website "Zero to 60 Times" lists a time for a' 1992 Mazda MPV to get to 60 mph as 11.2 seconds. See http://www.zeroto 60times.com/Mazda-0-60-mph-Times.html (last visited April 11, 2013). And it would obviously have to travel a lot farther than fifty feet to get up to speed. The quarter mile time for that vehicle is listed by the same website as 18.1 seconds.